**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 27 2012

JEFFREY P. COLWELL
**CLERK**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-02558-REB-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

CENTURY SHREE CORP., d/b/a HAMPTON INN & SUITES,

    Defendant.

---

 **CONSENT DECREE**

---

## I. RECITALS

1.    This matter was instituted by Plaintiff, Equal Employment Opportunity Commission ("Commission" or "EEOC"), a government agency tasked with enforcing the employment civil rights laws of the United States of America, alleging that Defendant Century Shree Corp. ("Century Shree") discharged Wendy Buckley, Ashlee Flannery, Dewetta McKnight and other aggrieved individuals because of their National Origin, non-Hispanic, and Race, Caucasian, in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. §§ 2000e-5(f)(1) and (3). The EEOC also alleges that Defendant violated the records keeping requirements of 29 C.F.R. § 1602.14.

2.    The Parties to this Decree are the Plaintiff EEOC and the Defendant, Century Shree Corporation.

**3.**     The Parties, desiring to settle this action by an appropriate Consent Decree ("Decree"), agree to the jurisdiction of this Court over the Parties and the subject matter of this action, and agree to the power of this Court to enter a Consent Decree enforceable against Defendant.

**4.**     As to the issues resolved, this Decree is final and binding upon the Parties and their successors and assigns.

**5.**     For the purpose of amicably resolving disputed claims, the Parties jointly request this Court to adjudge as follows:

## IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

## II. JURISDICTION

**6.**     The Parties stipulate to the jurisdiction of the Court over the Parties and subject matter of this action and have waived the entry of findings of fact and conclusions of law.

## III. TERM AND SCOPE

**7.**     **Term:**  The duration of this Decree shall be five (5) years from the date of signing by the Court.

**8.**     **Scope:**  The terms of this Decree shall apply to Defendant Century Shree Corporation's hotel franchise, the Hampton Inn & Suites, located in Craig, Colorado, and all other places of accommodation owned or managed currently, or in the future, by Defendant.

## IV. ISSUES RESOLVED

**9.** This Decree resolves the claims alleged in the above-captioned lawsuit, and constitutes a complete resolution of all of the Commission's claims of unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended, that arise from Charges of Discrimination Number 846-2010-13511, 541-2010-00780, and 541-2010-01078 filed by Wendy Buckley, Dewetta McKnight, and Ashlee Flannery respectively.

**10.** Defendant and their officers, agents, employees, successors, and all other persons in active concert or participation with any of them will not interfere with the relief herein ordered, but shall cooperate in the implementation of this Decree.

## V. MONETARY RELIEF

**11.** Judgment is hereby entered in favor of the Commission and against Defendant in the amount of eighty-five thousand dollars ($85,000.00).

**12.** Defendant will not condition the receipt of individual relief upon agreement by Wendy Buckley, Dewetta McKnight, Ashlee Flannery, or any of the other aggrieved individuals identified by the EEOC to: (a) maintain as confidential the terms of this Decree or the facts of the case; (b) waive his or her statutory right to file a charge with any federal or state anti-discrimination agency; or (c) promise not to reapply for a position at any Century Shree hotel or other related business enterprise.

**13.** To resolve these claims, Defendant shall pay a total of eighty-five thousand dollars ($85,000.00), allocated amongst back-pay and compensatory/punitive damages as determined by the EEOC.

13.1.   Damages in Total:

    **13.1.1.**   Dewetta McKnight: $31,000.00

    **13.1.2.**   Wendy Buckley: $25,000.00

    **13.1.3.**   Ashlee Flannery: $25,000.00

    **13.1.4.**   Sarah Doizaki: $2,000.00

    **13.1.5.**   Cynthia Wall: $2,000.00

**14.**   The payments required under this Decree shall be mailed to the payee(s) in the following schedule:

  **14.1.**   November 30, 2012: $17,000.00 to include:

    **14.1.1.**   Dewetta McKnight: $5,000.00

    **14.1.2.**   Wendy Buckley: $5,000.00

    **14.1.3.**   Ashlee Flannery: $5,000.00

    **14.1.4.**   Sarah Doizaki: $1,000.00

    **14.1.5.**   Cynthia Wall: $1,000.00

  **14.2.**   July 31, 2012: $35,000.00 to include:

    **14.2.1.**   Dewetta McKnight: $14,000.00

    **14.2.2.**   Wendy Buckley: $9,500.00

    **14.2.3.**   Ashlee Flannery: $9,500.00

    **14.2.4.**   Sarah Doizaki: $1,000.00

    **14.2.5.**   Cynthia Wall: $1,000.00

**14.3.** February 15, 2014: $13,000.00 to include:

    **14.3.1.** Dewetta McKnight: $5,000.00

    **14.3.2.** Wendy Buckley: $4,000.00

    **14.3.3.** Ashlee Flannery: $4,000.00

**14.4.** July 31, 2014: $20,000 to include:

    **14.4.1.** Dewetta McKnight: $7,000.00

    **14.4.2.** Wendy Buckley: $6,500.00

    **14.4.3.** Ashlee Flannery: $6,500.00

**15.** Within three (3) business days after payments are mailed to payees, Defendant shall submit to EEOC a copy of the checks issued.

**16.** Late fees shall accrue at the rate of $10 per day, per payee. If Defendant is delinquent more than 30 days on any payment, judgment shall enter in favor of each payee in the amount of $50,000 plus all amounts due on the remaining scheduled payments.

**17.** Century Shree Corp. owner, Falgun Patel has provided the EEOC a fully executed personal guaranty a copy of which is attached hereto as Exhibit A.

## VI. OTHER INDIVIDUAL RELIEF

**18.** Defendant shall expunge from the personnel files of Wendy Buckley, Dewetta McKnight, Ashlee Flannery, and any the other aggrieved individuals identified by the EEOC as victims in this litigation: (a) any and all references to the underlying subject matter and allegations of discrimination filed against Defendant that formed the basis of this action; (b) any and all references to the participation of Wendy Buckley, Dewetta

McKnight, Ashlee Flannery, and any of the other aggrieved individuals identified by the EEOC in this civil action and the administrative investigation preceding; and (c) any and all documents that refer, make reference to, or relate to any alleged performance deficiencies by Wendy Buckley, Dewetta McKnight, Ashlee Flannery, and the other aggrieved individuals.

19.    Defendant shall expunge the termination from the personnel files of Wendy Buckley, Dewetta McKnight, Ashlee Flannery, and the other aggrieved individuals, and shall ensure that all of Defendant' records reflect that the three voluntarily resigned from their employment. Further, Defendant will provide a positive letter of reference.

20.    Within ten (10) days after entry of this Decree, Defendant shall provide a letter of apology to Wendy Buckley, Dewetta McKnight, Ashlee Flannery, and the other aggrieved individuals identified by the EEOC on company letterhead in the form attached as Exhibit B.

21.    After entry of this Decree, for each laundry and/or housekeeping position that becomes available at Defendant Century Shree Corporation's Hampton Inn & Suites franchise in Craig, Colorado, Defendant shall offer the position to Wendy Buckley, Dewetta McKnight, and/or Ashlee Flannery contingent on her ability to fulfill the requirements and hours of the position. Duties, salary, and benefits must be identical to or superior to those previously enjoyed by Mses. Buckley, McKnight, and Flannery. In the event that Wendy Buckley, Dewetta McKnight, or Ashlee Flannery declines the offer of reinstatement, Defendant' obligation under this provision with respect to that

individual is discharged after three attempts to extend an offer. Such offers and any declines must be documented in writing by Defendant.

## VII. EQUITABLE RELIEF

### A.     *Injunctive Relief*

**22.**     Defendant, their officers, agents, successors, and other persons in active concert or participation with it, or any of them, are permanently enjoined from engaging in any employment practice which discriminates on the basis of race and national origin.

**23.**     Defendant, their officers, agents, successors, and other persons in active concert or participation with them, or any of them, are permanently enjoined from engaging in reprisal or retaliation of any kind against any person because of such person's opposition to any practice made unlawful under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, as amended, the Age Discrimination in Employment Act, the Equal Pay Act, or the Genetic Information Nondiscrimination Act of 2008. Defendant shall not retaliate against a person because such person brings an internal complaint of discrimination with the Defendant; because such person files or causes to be filed a charge of discrimination with the Commission or with any other state or federal agency tasked with enforcing antidiscrimination law, whose statements serve as the basis of a charge; or because such person testifies or participates in the investigation or prosecution of an alleged violation of these statutes. Defendant shall not retaliate in any manner against individuals identified as witnesses in this action or who assisted in the investigation giving rise to this action. Nor shall Defendant retaliate

against any such persons identified as a witness or possible witnesses of discrimination in future investigations or proceedings.

**B.     EEO Policy Review**

**24.**     Within sixty (60) days of the entry of this Decree, the Defendant shall, in consultation with an outside consultant experienced in the area of employment discrimination law ("Consultant"), review their existing EEO policies to ensure that they are in conformance with the most recent legal obligations and to incorporate any identified industry best practices. The review shall be complete within ninety (90) days of entry of the Decree.

**25.**     The written EEO policies must include at a minimum:

**25.1.**     A strong and clear commitment to preventing unlawful race, national origin discrimination, and retaliation;

**25.2.**     A clear and complete definition of disparate treatment based on race, national origin, and retaliation including a clear explanation of both conscious discriminatory animus and unconscious reliance on stereotypes;

**25.3.**     A statement that discrimination based on race, national origin, or retaliation is prohibited by both law and Defendant and will not be tolerated;

**25.4.**     A clear and strong encouragement of persons who believe they have been discriminated or retaliated against to report such concerns;

**25.5.**     The identification of more than one individual, easily and regularly accessible to employees, and including telephone numbers, to whom employees can report their concerns about discrimination, harassment, or retaliation;

8

**25.6.** A clear explanation of the steps an employee must take to report discrimination or retaliation, which must include the options of either an oral or written complaint;

**25.7.** An assurance that Defendant will investigate allegations of any activity that might be construed as unlawful discrimination, whether complainant employs such technical or legal language, and will do so promptly, fairly, reasonably, and effectively using a neutral investigator specifically trained in receiving, processing, and investigating claims of discrimination;

**25.8.** An assurance that appropriate corrective action will be taken by Defendant including not only discipline of the individual found to have discriminated, but also to make victims whole, including appropriate remuneration and/or equitable relief for the victim(s), and to eradicate the unlawful conduct within its workforce;

**25.9.** A description of the consequences, up to and including termination, that will be imposed upon violators of Defendant' antidiscrimination policies;

**25.10.** A promise of confidentiality, to the maximum feasible, for persons who report unlawful discrimination, harassment, and/or retaliation, or who participate in an investigation into allegations of discrimination, harassment, and/or retaliation; and

**25.11.** An assurance of non-retaliation for persons who report unlawful discrimination, harassment, and/or retaliation, and for witnesses who provide

testimony or assistance in the investigation(s) of such unlawful discrimination, harassment, and/or retaliation.

**26.** The written EEO policies, reviewed and revised under Paragraphs 24 and 25 above, shall be distributed to all employees within thirty (30) days of completion of the policy review required under Paragraphs 24 and 25, and, thereafter, upon initial hire and then annually to all employees. Defendant shall make the written EEO policies available in alternative formats as necessary for persons with cognitive and print disabilities that may prevent them from reading the policies. Alternative formats will include but not be limited to an audiotape format.

**27.** Within thirty (30) days after completion of the policy review required under Paragraphs 24 and 25, the revised policies shall also be posted in a prominent location frequented by employees at Defendant Century Shree Corporation's establishment in Craig, Colorado.

**C.    *Training***

**28.** At least annually, for the five years of this Decree, Defendant shall provide EEO training for all its employees. Under this provision, employees will be trained at a minimum in the following areas: (a) understanding the kind of conduct which may constitute unlawful discrimination or harassment including disparate treatment based on overt or subconscious bias under Title VII of the Civil Rights Act of 1964, as well as other modes of discrimination under Title VII, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, and the Genetic Information Nondiscrimination Act of 2008; (b) the Defendant' policy and procedures for reporting

alleged discrimination; (c) the penalties of engaging in discriminatory behavior; and (d) Defendant' non-retaliation policy. All training under this Paragraph shall be at Defendant' selection and expense. Training may be by live presentation, online interactive training, and/or computer training, or any combination of the foregoing. The training will be conducted as follows:

**28.1. Non-managerial Employees:** Each year of this five year Decree, the Defendant will provide all non-managerial employees at least twelve (12), thirty (30) minute monthly trainings at the Hampton Inn & Suites in Craig and all other places of public accommodation owned, operated, or managed by Defendant. These trainings may be presided over by a supervisor or manager properly trained by Defendant in accordance with Paragraph 28.4, or by an outside consultant or vendor. Attendance will be mandatory for every employee on the days of such training. At least six (6) of these meetings will focus on race and national origin discrimination under Title VII. At least two (2) of these meeting shall focus on non-retaliation law. Trainings shall include handouts which explain the antidiscrimination statute being discussed, and provide an explanation of the Equal Employment Opportunity Commission as well as the address, phone number, and website of the Denver Field Office EEOC.

**28.2. Managerial and Supervisory Employees**:  Each year of this five year Decree, Defendant will require all individuals who work in a managerial or supervisory capacity, including all department supervisors, general managers, or other agents in positions of power including the authority to control or determine

work assignments, evaluate employees, discipline, hire or terminate, or to suggest or influence these decisions, to receive at least ten (10) hours of training annually regarding Title VII and other federal anti-discrimination laws. The training under this Paragraph must be provided by an outside consultant or vendor.

    **28.2.1.**    Four (4) of the ten (10) hours must directly address race and national origin discrimination, including training employees in the unlawfulness of discriminatory animus and in the prohibition against relying on conscious or unconscious stereotypes when rendering a workplace decision or action.

    **28.2.2.**    Two (2) of the ten (10) hours must be instruction in the proper methods of receiving complaints of discrimination (whether oral or written), documenting, communicating, investigating (where applicable), and ameliorating discrimination, including the proper procedures for documenting complaints of discrimination (whether oral or in writing) and for preserving evidence of discrimination, archiving the corporation's investigation of any complaints, and documenting the results of and any actions taken by Defendant as a result of its investigation. Supervisorial and managerial agents shall be specifically trained in practices aimed at repressing and ameliorating discrimination, including procedures for instituting progressive discipline against the discriminator and steps Defendant can take to right the emotional and financial wrongs suffered by

the victim(s).    Defendant shall emphasize with managerial and supervisorial employees that due to their position of power, such employees must, (a) be particularly vigilant not to discriminate, whether consciously or because they rely on subconscious stereotypes; (b) be sensitive of how their actions or words might be perceived by or practically affect subordinate employees; and (c) avoid the temptation to retaliate against an employee because a complaint is made, or might be made, against them.

**28.2.3.**    Defendant will require employees who are newly hired or recently promoted into a managerial or supervisory position to complete the requisite two (2) hours of complaint-handling training and two (2) hours of race-and-national-origin-discrimination-related training within twenty (20) days of being hired or promoted.

**28.3. Owners:**  In the first year of this Decree, the Owners, Shareholders, Principals, and any Board Members of Century Shree Corp. must receive at least sixteen (16) hours of training on Title VII of the Civil Rights Act of 1964, as amended, and other federal anti-discrimination laws, to be completed within sixty (60) days of entry of this Decree or, within sixty (60) days after date of effective ownership or control. Thereafter, each year for the remaining four years of this Decree, the Owners, Shareholders, Principals, and any Board Members of Century Shree Corp. must undergo at least eight (8) hours of additional education and training annually on equal employment opportunity law including

13

at least three (3) hours in race and national origin discrimination and one (1) hour in non-retaliation obligations. The training under this Paragraph must be provided by outside consultants or vendors.

**28.3.1.**     At least six (6) of the introductory sixteen (16) hours must address race and national origin discrimination, including explanation of both conscious animus and subconscious bias. Additionally, at least three (3) hours of the introductory sixteen (16) hours must include instruction in the proper methods of receiving, communicating, investigating (where applicable), and ameliorating discrimination, including the proper procedures for documenting complaints of discrimination (whether oral or in writing) and for preserving evidence of discrimination, archiving the corporation's investigation of any complaints, and documenting the results of and any actions taken by Defendant as a result of its investigation.

**28.3.2.**     Because the owners, shareholders, principals, and any board members of Defendant have a close relationship and regular contact and influence of the daily operations at the Hampton Inn & Suites franchise in Craig, Colorado, their training shall include training in practices aimed at repressing and ameliorating discrimination, including procedures for instituting progressive discipline against the discriminator and steps the Defendant can take to right the emotional and financial wrongs suffered by the victim(s).  Training shall emphasize that, because the owners, shareholders, and any board members of Defendant have

strong and immediate influence over daily operations that, due to their position of power, such individuals must, (a) be particularly vigilant not to discriminate, whether consciously or unconsciously; (b) be sensitive of how their actions or words might be perceived by or practically affect subordinate employees; and (c) avoid the temptation to retaliate against an employee because a complaint is made, or might be made, against them.

**28.3.3.** The annual trainings thereafter shall include at least three (3) hours of race and national origin training and one (1) hour of investigation and archiving techniques as described in 27.3.1.

**28.4. Train the Trainers:** Any supervisor, manager, or owner/shareholder/principal/ board member tasked with training employees under Paragraph 28.1 above, must undergo an additional three (3) hours of training, in addition to those required under Paragraphs 28.2 and 28.3, on how to effectively educate and present equal employment opportunity materials to employees. The training under this Paragraph must be provided by an outside consultant or vendor. Reading Defendant' antidiscrimination policies out loud, or presenting a video, and then asking employees whether they have any questions does not constitute adequate training of employees. Agents must receive training in how to explain the complexities and details of civil rights law and Defendant' practices and procedures and ensure that employees understand them.

**29.    Training on Investigative Techniques:**  All employees with responsibility for responding to or investigating complaints of discrimination, shall be provided five (5) additional hours of annual training instructing on accepted professional best practices for receiving and investigating complaints of discrimination, including such matters as identifying oral and written complaints that suggest discrimination even if such language is not used by the complainant, documenting oral, not just written, complaints, witness interview techniques, other evidence-gathering techniques, maintaining investigative notes and records, analysis of the evidence, and methods for eliminating and ameliorating violations of antidiscrimination law. The training under this Paragraph must be provided by an outside consultant or vendors.

   **29.1.** Defendant shall promptly, reasonably, and appropriately investigate all complaints of discrimination. The investigation must include, at a minimum, the following: (a) documentation of the complaint; (b) a finding of whether discrimination occurred; (c) a credibility assessment as appropriate; (d) interviews of all potential victims and witnesses identified, including the individual(s) alleged to have participated in or condoned the unlawful conduct; and, (e) a review of all documents which might shed light on the allegation, where such exist; (f) contemporaneous notes of the investigation and conclusions; and, (g) contemporaneous notes of all corrective and remedial measures where discrimination is found.

**29.2.** Defendant shall take immediate appropriate corrective action to make discrimination victims whole, to discipline violators, and to eradicate the current and all future discrimination.

**29.3.** Defendant shall not retain documents related to the investigation in any of the complainant's personnel files. These documents, instead, must be retained in a separate secure location. All disciplinary actions taken against employees for violation of Defendant' antidiscrimination policy will be retained in the violator's personnel file. In those cases in which no conclusion could be reached on the allegations, the investigation documents shall remain in the alleged violator's file for a period no less than five (5) years.

**30.**   Defendant agree that the first such training session for each employee group identified in Paragraph 28 and 29 above will take place within sixty (60) days after the Court's entry of this Decree. Defendant agrees that all of its personnel shall both register and attend the training sessions.

**31.**   The Commission, at its discretion, may designate one or more Commission representatives to attend any of the training sessions described above, and the Commission representatives shall have the right to attend, observe, and fully participate in all of the sessions.   Defendant shall provide the Commission with thirty (30) days notice that a training session will be conducted. Defendant are free to provide notice in excess of thirty days by providing a comprehensive schedule of trainings for the year or for a number of months if such is more convenient.

**D.    Notice Posting**

**32.**    Within five (5) business days after the Court's entry of this Decree, Defendant shall post in the Hampton Inn & Suites franchise in Craig, Colorado, in a conspicuous place frequented by employees, the Notice attached as Exhibit C to this Decree. The Notice shall be the same type, style, and size as set forth in Exhibit C. The Notice shall remain posted for the duration of this Decree.   If the Notice becomes defaced or illegible, Defendant will replace it with a clean copy. Defendant shall certify to the Commission, in writing, within ten (10) days of entry of this Decree that the Notice has been properly posted and shall provide recertification in each of the semi-annual reports required under the Reporting provisions of this Consent Decree.

**E.    EEO Compliance as a Component of Management Evaluation**

**33.**    Defendant shall, within sixty (60) days of the entry of this Consent Decree, and at least continuously for the duration of this Decree, develop and implement a management evaluation and compensation system which includes equal employment opportunity law compliance, compliance with policies and laws prohibiting retaliation, compliance with the antidiscrimination policies enacted and implemented by Defendant, and compliance with this Decree as factors which shall be used to evaluate all supervisorial and managerial employees, including but not limited to department heads, general mangers, and all employees otherwise situated in positions of power including with authority to determine and control work assignments, discipline, hire or discharge, or to recommend or influence such decisions at the Hampton Inn & Suites in Craig, Colorado, and any other place of public accommodation the Defendant own, operate, or

manage. Defendant shall also, within sixty (60) days of the Court's entry of this Decree, and at least continuously for the duration of this Decree, advise Defendant' supervisorial and managerial agents that the amount of monetary bonuses these managers may be eligible for, if such is applicable, are subject to reductions based on established non-compliance with equal employment opportunity procedures, policies and laws.

### VIII. Record Keeping and Reporting Provisions

**34.**   Defendant shall, in consultation with the outside Consultant referred to in Paragraph 24 above, create and implement a recordkeeping system that at a minimum conforms with, but should surpass, that required by 29 C.F.R. § 1602.14.

**35.**   For the duration of this Consent Decree, Defendant shall maintain all records concerning implementation of this Consent Decree, including, but not limited to, all of the following:

> **35.1.** Applications;
>
> **35.2.** Personnel files;
>
> **35.3.** Payroll records;
>
> **35.4.** Job Postings;
>
> **35.5.** Work schedules; and
>
> **35.6.** Complaints of discrimination and records documenting investigation of such complaints, including witness statements, related documents, conclusions and findings, and any corrective and remedial actions taken.

**36.**   The Defendant shall provide the EEOC with an initial preliminary report thirty (30) days after completion of the policy review required under paragraphs 24 and 25 of this

Decree. For the duration of the Decree, Defendant shall provide EEOC with semi-annual reports for each six-month period thereafter. The reports shall be due thirty (30) days following the respective six-month period, except the final report which shall be submitted to the Commission at least one hundred twenty (120) days prior to the date on which the Consent Decree is to expire.

37.   **Reporting Requirements:**  Each report shall provide the following information:

37.1.  **Reports of Discrimination**

37.1.1. For purposes of this Paragraph, the term "report of discrimination" will include any written or verbal complaint which alleges discrimination, or the witnessing of discrimination, based on race or national origin, or the suffering or witnessing of conduct which a supervisor or manager recognizes or should have recognized as constituting possible race or national origin discrimination, even if technical or legal terminology is not used by the complainant. The complainant need not invoke the terms "discrimination," "Title VII," "disparate treatment," "violation," or "rights," etc. Employees are not trained in legalese and frequently use such terms as "unfair," "unprofessional," "uncomfortable," "unjust," "retaliatory," "treated differently," or "disciplined without or for no reason" and other such language that indicates an allegation of discrimination. The report will include:

a.      The name, address, email address, and telephone number of each

person making a complaint of race or national origin discrimination to Defendant or to any federal, state, or local government agency;

b.    The name, address, email address, and telephone number of each person identified as a potential witness to the incident of discrimination;

c.    A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the discriminatory conduct, the Defendant' investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what, if any resolution was reached; and

d.    Copies of all documents memorializing or referring to the complaint, investigation, and/or resolution thereof.

**37.2.  Complaints of Retaliation**

**37.2.1.**   For purposes of this Paragraph, the term "complaint of retaliation" will include any written or verbal complaint which alleges retaliation for activity that is protected under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, and/or the Genetic Information Nondiscrimination Act of 2008, or alleges retaliation for conduct which the Defendant recognizes or should have recognized as protected activity under any of those statutes even if the complainant does not use legal or technical terminology.  The report shall include:

a.    The name, address, email address, and telephone number of each

person making a complaint of retaliation to Defendant or to any federal, state, or local government agency;

b.      The name, address, email address, and telephone number of each person identified as a potential witness to the incident of retaliation;

c.      A brief summary of each complaint, including the date of the complaint, the name of the individual(s) who allegedly engaged in the retaliatory conduct, the Defendant' investigation and response to the complaint, the name of the person who investigated or responded to the complaint, and what, if any resolution was reached; and

d.      Copies of all documents memorializing or referring to the complaint, investigation, and/or resolution thereof.

37.3.  **Training**

    **37.3.1.**      For each training program required under Paragraphs 28.1-.5 and conducted during the reporting period, Defendant shall submit a registry of attendance.

    **37.3.2.**      For each training program required under Paragraphs 28.2-.5 and completed during the reporting period, Defendant shall provide a certificate of completion.

    **37.3.3.**      For each training program conducted by Defendant' agents under Paragraph 28.1, Defendant will provide the following information: (a) a detailed agenda; (b) copies of all training material provided to or utilized by the trainers; (c) the name of each trainer and a summary of his

or her qualifications.

**37.3.4.**      For each training program conducted by an outside consultant or vendor, Defendant will identify the consultant and/or vendor and provide a copy of the program agenda.

**37.4. Posting of Notice**:  Defendant shall recertify to the Commission that the Notice required to be posted under Section G, Paragraph 32, of this Consent Decree has remained posted during the reporting period, or, if removed, was promptly replaced.

**37.5. Policy Review**:  Defendant shall report on the status of the EEO policy review process required under Section B, above.

**37.6. Other Equitable Relief:** Defendant shall report on all offers to reinstate under Paragraph 21 and whether such offer was accepted or declined within ten (10) days of the rejection or acceptance.

### IX. RETENTION OF JURISDICTION AND ENFORCEMENT OF DECREE

**38.**      This Court shall retain jurisdiction of this cause for purposes of compliance with this Decree and entry of such further orders or modifications as may be necessary or appropriate to effectuate equal employment opportunities for employees.

**39.**      There is no private right of action to enforce Defendant' obligations under the Decree and only the Commission, or its successors or assigns, may enforce compliance herewith.

**40.**      The Commission may petition this Court for compliance with this Decree at any time during which this Court maintains jurisdiction over this action. Should the Court

determine that Defendant have not complied with this Decree, appropriate relief, including extension of this Decree for such period as may be necessary to remedy its non-compliance, may be ordered.

**41.**     Absent extension, this Decree shall expire by its own terms at the end of the 60th month from the date of entry without further action by the Parties.

## X. EEOC AUTHORITY

**42.**     With respect to matters or charges outside the scope of this Decree, this Decree shall in no way limit the powers of the Commission to seek to eliminate employment practices or acts made unlawful by any of the statutes over which the EEOC has enforcement authority, and do not arise out of the claims asserted in this lawsuit.

## XI. COSTS AND ATTORNEY'S FEES

**43.**     Each party shall be responsible for and shall pay its own costs and attorney's fees.

## XII. NOTICE

**44.**     Unless otherwise indicated, any notice, report, or communication required under the provisions of this Decree shall be sent by certified mail, postage prepaid, as follows:

For Plaintiff:
Rita Byrnes Kittle, Supervisory Trial Attorney
EEOC Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO 80203

For Defendant:
Falgun Patel,
c/o Timothy Kingston
Office of Tim Kingston LLC
408 W. 23rd Street
Cheyenne, WY 82001

7) **XIII. SIGNATURES**

**45.** The parties agree to the entry of this Decree subject to final approval by the Court.

SO ORDERED this 27th day of September, 2012.

BY THE COURT:

*Rob Blackburn*

**United States District Judge**

BY CONSENT:

**Equal Employment Opportunity Commission**

By: *Mary Jo O'Neill /SS*
Mary Jo O'Neill
Regional Attorney

Date: 9/21/12
Century Shree Corporation

By: *Falc 9. A102*                     X

Date: 9/21/12

APPROVED AS TO FORM:

*Iris Halpern*                          *Tim Kingston*
Iris Halpern                            Tim Kingston
Trial Attorney                          Law Office of Tim Kingston LLC
EEOC Denver Field Office                408 W. 23rd Street
303 E. 17th Avenue, Suite 510           Cheyenne, WY 82001
Denver, CO  80203

Attorneys for Plaintiff EEOC            Attorney for Defendant Century Shree Corp.

## EXHIBIT A

### GUARANTY

In consideration of, and as an inducement to the Equal Employment Opportunity Commission, an agency of the United States of America ("**EEOC**"), to agree to the settlement with Century Shree, Corp., a Wyoming corporation ("**Company**") set forth in the Consent Decree filed with the United District Court for the District of Colorado with respect to Civil Action No. 11-cv-02558-REB-CBS (the "**Consent Decree**"), the undersigned, jointly and severally (collectively, "**Guarantor**"), hereby guarantees, absolutely and unconditionally, to EEOC the full and prompt performance of all terms, covenants, conditions and agreements to be performed and observed by Company under the Consent Decree and any and all amendments, modifications and other instruments relating thereto, whether now or hereafter existing, and the full and prompt payment of all costs and expenses which shall at any time be recoverable by EEOC from Company by virtue of the Consent Decree and any amendments, modifications and other instruments relating thereto (hereinafter called "**Liabilities of Company**"); and Guarantor hereby covenants and agrees to and with EEOC, together with its successors and assigns, that if Company shall breach the Consent Decree at any time in the payment of sums or charges due and payable by Company under the Consent Decree or in the performance of any of the terms, covenants, provisions or conditions contained in the Consent Decree, Guarantor is liable and will forthwith pay such sums and charges and will forthwith faithfully perform and fulfill all of such terms, covenants, conditions and provisions of the Consent Decree.

Guarantor agrees that, with or without notice or demand, Guarantor will reimburse EEOC, to the extent that such reimbursement is not made by Company, for all expenses (including reasonable attorneys' fees and disbursements) incurred by EEOC in connection with any default by Company under the Consent Decree or the default by Guarantor under this Guaranty.

Notwithstanding any provision to the contrary contained herein, Guarantor hereby unconditionally and irrevocably waives any and all rights of reimbursement, contribution or indemnity against Company which may have heretofore arisen or may hereafter arise in connection with any guaranty or pledge or grant of any lien or security interest made in connection with the Consent Decree. Guarantor hereby acknowledges that the waiver contained in the preceding sentence is given as an inducement to EEOC to enter into the Consent Decree and, in consideration of EEOC's willingness to agree to the Consent Decree, Guarantor agrees not to amend or modify in any way the foregoing waiver without EEOC's prior written consent. If any amount shall be paid to Guarantor by Company on account of any claim set forth at any time when all the Liabilities of Company shall not have been paid in full, such amount shall be held in trust by Guarantor for EEOC's benefit and, to the extent of any matured and unpaid liabilities of Company to EEOC under the Consent Decree, shall be immediately tendered pursuant to the Consent Decree. Nothing herein contained is intended or shall be construed to give to Guarantor any rights of subrogation or right to participate in any way in EEOC's right, title or interest in the Consent Decree, notwithstanding any payments made by Guarantor to or toward any payments due from Guarantor under this Guaranty, all such rights of subrogation and participation being hereby expressly waived and released.

Guarantor hereby expressly waives (a) notice of acceptance of this Guaranty; (b) presentment and demand for payment of any of the Liabilities of Company; (c) protest and notice of dishonor or default to Guarantor or to any other party with respect to any of the Liabilities of Company; (d) all other notice to which Guarantor might otherwise be entitled; (e) any law requiring EEOC to institute an action against any other party (including, without limitation, Company) in order to institute an action or obtain a judgment against Guarantor, as well as any suretyship laws, and (f) any demand for payment under this Guaranty; and Guarantor hereby expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion or the failure to assert by EEOC against Company, or Company's successors and assigns, of any of the rights or remedies reserved to EEOC pursuant to provisions of the Consent Decree.

This is an absolute and unconditional guaranty of payment and not of collection and Guarantor further waives any right to require that any action be brought against Company or any other person or entity. Successive recoveries may be had hereunder. No invalidity, irregularity or unenforceability of all or any part of the Consent Decree shall affect, impair or be a defense to this Guaranty and this Guaranty shall constitute a primary obligation of the undersigned.

Each reference herein to Guarantor shall be deemed to include the heirs, distributees, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

No delay on the part of EEOC in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on Guarantor shall be deemed to be a waiver of the obligation of Guarantor or of the right of EEOC to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty nor any termination hereof be effective unless in writing signed by EEOC, nor shall any waiver be applicable except in the specific instance for which given; provided, however, that this Guaranty will automatically terminate upon the expiration or sooner termination of the Consent Decree.

This Guaranty shall continue to be effective or be reinstated, as the case may be, if any payment of Guarantor on account of the Liabilities of Company must be returned upon the insolvency, bankruptcy or reorganization of Company, Guarantor, or otherwise, as though such payment had not been made.

This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Colorado. In any action or proceeding arising out of this Guaranty, Guarantor agrees to submit to personal jurisdiction in the State of Colorado. Guarantor agrees to pay all costs and expenses, including, without limitation, reasonable attorneys' fees, which are incurred by EEOC in the enforcement of this

Sep. 21. 2012  4:55PM                                    No. 5848   P. 3

Guaranty.

     This Guaranty may be executed in one or more counterparts, each of which counterparts shall be an original.

     All of EEOC's rights and remedies under the Consent Decree or under this Guaranty are intended to be distinct, separate and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of or a waiver of any of the others.

     As a further inducement to EEOC to consent to the Consent Decree and in consideration thereof EEOC and Guarantor covenant and agree that in any action or proceeding brought on, under or by virtue of this Guaranty, EEOC and the Guarantor shall and do hereby waive trial by jury.

     IN WITNESS WHEREOF, the undersigned have executed this Guaranty on the dates set forth below.

**GUARANTOR:**

_Falgun G. Patel_         X

FALGUN PATEL, an individual

Date: 9/21/2012

Address for Notice: C/o Tim Kingston.
Law office of Tim Kingston LLC
408 W. 23rd St
Cheyenne, Wy 82001

STATE OF ~~COLORADO~~      )

COUNTY OF LARAMIE      ) ss.
                      )

On the 21st day of September, 2012, before me personally came FALGUN PATEL, who executed the foregoing instrument and acknowledged that he executed the same.

WITNESS my hand and official seal.

_Timothy C. [signature]_

          My Commission Expires on:

Notary Public

TIMOTHY C. KINGSTON - NOTARY PUBLIC
COUNTY OF LARAMIE    STATE OF WYOMING
MY COMMISSION EXPIRES FEB. 18, 2013

**EXHIBIT B**

[Company letterhead]

Name of Victim
Address

Dear Ms.                        ,

     On behalf of Century Shree Corporation and the owners and managers of the franchise Hampton Inn & Suites in Craig, Colorado, please accept my sincere apology for the manner in which you were discharged from your employment with us in 2009.

     We are committed to ensuring that any hotels owned, operated, or managed by our companies are completely free of race and national origin discrimination. As a result what you were subjected to, we are undertaking a comprehensive review or our equal employment opportunity policies and practices in order to ensure that no future employees suffer from discrimination.

     We apologize for any grief or inconvenience caused by our decision to terminate you. It is our intent to fully comply with Title VII of the Civil Rights Act of 1964, as amended and to continue to educate our shareholders, managers, and employees about antidiscrimination laws and the need to avoid relying on conscious or unconscious stereotypes of race and national origin when making employment decisions.

                     Sincerely,

_____

## EXHIBIT C

## <u>NOTICE</u>

The following notice is being posted pursuant to the terms of a Consent Decree reached between the Parties in <u>EEOC v. Century Shree Corp d/b/a Hampton Inn & Suites</u> filed in the United States District Court for the District of Colorado, Civil Action No. 11-cv-02558-REB-CBS.

Management of Century Shree Corp. wishes to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operation and in all areas of employment practices. Century Shree Corp. seeks to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age or disability. This policy extends to insurance benefits and all other terms, conditions and privileges of employment.

Pursuant to Title VII of the Civil Rights Act of 1964, as amended, it is unlawful for an employer to discriminate based upon the race or national origin of an applicant or employee. Further, it is unlawful for any employer to retaliate against an employee because he or she has made an internal complaint of discrimination or otherwise opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Century Shree Corp. respect the right of their employees and applicants for employment to work in an environment free from discrimination. Accordingly, Century Shree Corp. reaffirms its commitment to complying with the strictures of Title VII of the Civil Rights Act of 1964, in that it is our policy to prohibit all discrimination based on race and national origin.

Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, or disability, has the right to contact the Equal Employment Opportunity Commission, the federal government agency tasked with enforcing the civil rights laws of this country. Reporting discrimination to the EEOC is free. Any employee who believes they have discriminated against has 300 days from the date they believe they suffered from a discriminatory act to contact the Agency. The EEOC can be reached by phone at 1-800-669-4000 and is located at 303 E. 17th Avenue Suite 410, Denver, Colorado 80203 . In compliance with federal law, no official at Century Shree Corp. will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC or its state counterpart.

This Notice shall remain posted for the term of five (5) years.

Century Shree Corp. d/b/a Hampton Inn & Suites

By:_____  _____
                                                                    Date